IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FAYE LESTER O'QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV783 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Faye Lester O'Quinn ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

November 1, 2006, alleging a disability onset date of December 31, 1988. (Tr. at 8, 48-49.)[2] Her application was denied initially (Tr. at 54-57) and upon reconsideration (Tr. at 59-62). Thereafter, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 63.) On March 9, 2009, Plaintiff appeared and testified at a hearing, accompanied by her non-attorney representative, Reverend Thomas W. Motley. (Tr. at 8.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 14) and, on August 19, 2010, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-4).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 1994.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 1988 through her date last insured of June 30, 1994 (20 CFR 404.1571 *et seq.*).
> . . . .
>
> 3. Through the date last insured, the claimant had the following severe impairments: post laminectomies and peripheral nerve damage (20 CFR 404.1520(c)).
> . . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer [Doc. #4].

> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). "Light work" involves lifting or carrying no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. The claimant was capable of: occasionally lifting/carrying twenty pounds; frequently lifting/carrying 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. However, the claimant was unable to climb and should have avoided unprotected heights and hazardous machinery.

(Tr. at 10-11.)

The ALJ determined that the demands of Plaintiff's past relevant work, as described by Plaintiff, exceeded the above residual functional capacity ("RFC"). However, the ALJ then considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. Accordingly, he concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date last insured. (Tr. at 14.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct

legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).³

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. § 404.1520(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed

---

³ "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical. " Craig, 76 F.3d at 589 n.1.

a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" in the period between her alleged onset date and the expiration of her insured status.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

6

She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from two severe impairments: post laminectomies and peripheral nerve damage. (Tr. at 10.) Although the ALJ found at step three that these impairments did not meet or equal a disability listing, he determined that Plaintiff could only perform light work with further limitations, such that she could not return to her past relevant work under step four of the analysis. (Tr. at 11-13.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the community and was therefore not disabled. (Tr. at 14.)

Plaintiff, who appears *pro se* in this forum, now claims that the ALJ erred in making his disability determination. She asks that the Court consider various pieces of evidence set out in her brief and "rule in [her] favor," by issuing a judgment reversing, vacating, and/or amending the ALJ's decision. (Pl.'s Mot. [Doc. #8] at 1-3 and Pl.'s Br. [Doc. #9] at 3.) It is difficult to discern the exact nature of Plaintiff's arguments, but given her *pro se* status, the Court has attempted to fully address all of the possible issues gleaned from her motion, brief, and complaint.

First, Plaintiff challenges the ALJ's failure "to declare the plaintiff a member of the subclass action lawsuit against the (SSA) Social Security Administration under Hyatt v. Barnhart, 315 F.3d [239] (4th Cir. 2002)." (Pl.'s Mot. at 2.) The Hyatt case or, more accurately, series of cases, involved the Social Security Administration's ("SSA") denial of disability claims under an improper pain standard. The class consisted of plaintiffs whose claims had been adjudicated and denied by the SSA under this standard, which was in effect from the 1980s through the early

7

1990s. However, inclusion in that class does not result in automatic entitlement to benefits; instead, the prior claims are simply subject to adjudication under the proper standard. In this case, it appears that Plaintiff previously filed a disability application in August 1988, which was denied on initial review. Plaintiff did not pursue the claim further at the time, and there is no evidence in the record that she ever sought reopening of that claim. However, Plaintiff subsequently filed the present disability application with the SSA on November 1, 2006, alleging a disability onset date of December 31, 1988. At the hearing on this claim, the ALJ denied her request to be "declared a member of the subclass action lawsuit," but nevertheless continued the sequential evaluation process. Thus, Plaintiff's claim, as asserted in 2006, has now been considered under the proper, post-Hyatt standard, covering the period from her alleged onset on December 31, 1988 through her date last insured on June 30, 1994. That determination included consideration of Plaintiff's medical records dating from 1987. It is not clear what further relief Plaintiff contends she would be entitled to as a result of Hyatt.[6]

Next, Plaintiff appears to challenge the ALJ's RFC assessment on two grounds. First, she contends that the ALJ failed to properly consider certain medical evidence, including a partial Workers' Compensation disability rating and a medical source statement from her current treating physician, Dr. Mark Cresenzo. (Compl. [Doc. #1] at 6-7; Pl.'s Br. at 3; Tr. at 157-58.) Second, she argues that the ALJ erred in finding her subjective reports of pain less than credible. (Compl. at 7.) After a thorough review of both the administrative decision and the underlying

---

[6] No other information has been presented regarding Plaintiff's prior claim. To the extent that Plaintiff seeks reopening or reassessment of a prior claim, that issue has not been presented as part of the present case.

8

records, the Court finds that substantial evidence supports the ALJ's assessment, as discussed below.

With respect to Plaintiff's contentions regarding her Worker's Compensation partial disability rating, the Court notes that pursuant to 20 C.F.R. § 404.1504, and as further explained in SSR 06-03p, the SSA is "not bound by disability decisions by other governmental and nongovernmental agencies." See also Yost v. Barnhart, 79 Fed. App'x 553, 556 (4th Cir. 2003). Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06-03p, 2006 WL 2329939, at *6-7. Although determinations by other agencies nevertheless must be considered, and in some instances accorded substantial weight, see Bird v. Commissioner of Social Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012) (finding such weight appropriate given the marked similarities between the SSA and Veterans Administration's disability programs), the facts in the present case limit the relevance of any prior determination. Plaintiff contends that she "received a (25%) twenty-five percent disability rating in her lower extremities, to wit, legs." (Pl.'s Br. at 3.) However, no disability rating of any kind appears in the record now before the Court. Even assuming that Plaintiff received such a rating in her prior Workers' Compensation claim (see Tr. at 308)[7], the RFC set forth by the ALJ acknowledges that Plaintiff continued to be at least somewhat limited by her on-the-job injury through her date last insured in that the RFC limits her to light work with further restrictions as to climbing, heights, and hazardous conditions. Thus, there is no basis to conclude that the ALJ failed to properly consider the evidence presented.

---

[7] Plaintiff's medical records from January 21, 1991 include a Workers' Compensation claim number, indicating that she filed a claim, but no further records relate the claim's resolution.

The medical source statement cited by Plaintiff is similarly unpersuasive. The statement from Dr. Cresenzo (Tr. at 326-329) was before the ALJ, but Dr. Cresenzo's opinion lends no support to Plaintiff's allegations of disability prior to June 30, 1994, her date last insured. In order to receive disability insurance benefits, a plaintiff must establish that she was disabled prior to the expiration of her insured status. See 42 U.S.C. § 423(c); Kasey v. Sullivan, 3 F.3d 75, 77 n. 3 (4th Cir. 1993). Medical evaluations made after that date are relevant only to the extent that they shed light on the claimant's condition prior to the expiration of her insured status. Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987). In the present case, Dr. Cresenzo offered his statement of Plaintiff's ability to do work-related activities as of January 31, 2009, nearly fifteen years after the expiration of Plaintiff's insured status. (Compl. at 6-7; Tr. at 157, 326-329.) As such, Dr. Cresenzo's findings are far too remote to relate back to Plaintiff's pre-1994 condition.

With respect to her claim that the ALJ erred in finding her subjective reports of pain less than credible, Plaintiff makes no specific arguments, but simply asks that her "testimony in regards to her pain and discomfort . . . be found credible given the nature of" her injuries and the medical evidence. (Compl. at 7.) The question, therefore, is whether the ALJ correctly assessed Plaintiff's pain allegations under the credibility framework set out in Craig, 76 F.3d at 594-95. Craig provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594

10

(citing 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

>   (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
>   (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>   (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

When the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, Plaintiff has alleged pain as a result of her documented back impairment, a condition which required four surgeries, and her related nerve damage. The ALJ determined at step one of the Craig analysis that these conditions could reasonably be expected to cause Plaintiff's alleged back pain. (Tr. at 13.) However, the ALJ found at step two that substantial evidence failed to support the intensity and persistence of the pain alleged by Plaintiff, particularly Plaintiff's allegation that pain rendered her incapable of all work activity. (Id.)

The credibility determination in this case is complicated by the fact that many of Plaintiff's descriptions of her condition and resulting limitations were provided fifteen years after her date last insured and more than twenty years after her alleged onset date. Plaintiff, who was forty-three years old at the time of her alleged disability onset, was sixty-four by the time of her

hearing. Her condition had understandably worsened over time, due not only to its nature, but to her increased age. Nevertheless, the records indicate that Plaintiff refused further surgeries after 1991, citing fear that they would worsen her condition (Tr. at 143, 181), and further nerve conduction studies, citing fear of needles (Tr. at 12, 343; Pl.'s Br. at 3). Although Plaintiff's physical therapist rated her rehabilitation potential as fair, Plaintiff discontinued her therapy after just two weeks, again claiming that it made her back problems worse. (Tr. at 37, 310-17.) After that time, Plaintiff only pursued conservative treatment consisting of oral medications and "living with the pain," despite her allegations of increasing problems. (See Tr. at 151, 181.)

Plaintiff's descriptions of her pain and limitations before her date last insured demonstrate that, during her unsuccessful attempt to return to work from November 1990 through April 1991, her pain increased significantly when she spent significant periods of time on her feet. (Tr. at 304-06.) Accordingly, she had difficulty working in her previous job at a jewelry store, which involved extensive standing and walking as well as heavy lifting. (Tr. at 13, 19-20, 31, 127, 304-306; Compl. at 7.) On March 11, 1991, Plaintiff was told by her treating neurologist to remain out of work "until further notice" after experiencing severe right leg pain. (Tr. at 303, 343.) Although Plaintiff claims that, based on this note, she was permanently disabled, the treatment records tell another story. In fact, her neurologist, Dr. Willis, stated that Plaintiff was "lost to follow up" after he issued his work note. (Tr. at 343.) In other words, there was no "further notice" regarding her work status because she had not returned to her physician's office to follow up. On April 1, 1991, Dr. Willis specifically refrained from issuing Plaintiff a rating for partial permanent disability until he could examine her again. (Tr at 343.)

Further, the only physician to examine Plaintiff's medical records as a whole, Dr. Elizabeth Hoyt, opined that, as of the date last insured, Plaintiff was capable of occasionally lifting/carrying twenty pounds, frequently lifting/carrying ten pounds, and standing, walking, and sitting for up to six hours in an eight-hour workday. (Tr. at 248.) The ALJ gave great weight to these findings and adopted them in pertinent part. (Tr. at 13.) Given this evidence, Plaintiff has not shown that the ALJ's credibility determination was "patently wrong." The Court therefore finds no error.

Finally, Plaintiff claims that the ALJ erred in relying on the SSA's Medical-Vocational Guidelines ("the grids") rather than the testimony of an impartial vocational expert at step five of the sequential analysis. (Pl.'s Mot. at 1-2.)[8] At step five of the sequential analysis, the government must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where a plaintiff suffers from purely exertional limitations,[9] the ALJ may apply the grids, contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish that claimant's vocational ability. See McLain v. Schweiker, 715 F.2d 866, 870 n.1 (4th Cir. 1983). If a plaintiff can perform the full range of work within one of the exertional categories defined by 20 C.F.R. § 404.1567, i.e., sedentary, light, medium, heavy, or very heavy, the Fourth Circuit has held that the grids adequately encompass the plaintiff's ability to perform basic work activities. See Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985). If, on

---

[8] Plaintiff's motion appears to challenge the ALJ's failure to use a vocational expert to determine if Plaintiff could perform the requirements of her past relevant work at step four. Because the ALJ found in Plaintiff's favor at step four, the Court gives Plaintiff the benefit of the doubt and assumes she meant to challenge the ALJ's failure to use a vocational expert at step five instead.

[9] Exertional limitations "affect only [a claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

the other hand, the claimant suffers from significant non-exertional limitations,[10] the grids are not determinative, and the ALJ must consider vocational expert testimony. McLain, 715 F.2d at 870 n.1. For example, where a claimant has significant mental limitations or very limited abilities to reach, bend, and manipulate objects, a simple restriction to light work, as set forth in the grids, may not accurately reflect her abilities or the jobs available to her. However, "certain additional nonexertional limitations may have very little effect on the range of work remaining that an individual can perform, . . . because relatively few jobs in the national economy require these skills" at the given exertional level. Sherby v. Astrue, 767 F. Supp. 2d 592, 597 (D.S.C. 2010). The latter situation clearly exists in the present case. Here, the ALJ explained that Plaintiff's "additional limitations of no climbing and avoiding unprotected heights and hazardous machinery had little or no effect on the occupational base of unskilled light work." (Tr. at 14.) Plaintiff suggests no evidence which would alter this finding, and none is apparent from the record. Accordingly, the Court finds no error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #10] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 4th day of September, 2014.

                                                         /s/ Joi Elizabeth Peake
                                                     United States Magistrate Judge

---

[10] Non-exertional limitations affect a claimant's ability to meet the other demands of job and include mental limitations, pain limitations, and physical limitations not included in the seven strength demands.